George H. Parsells, III
William N. Aumenta
McELROY, DEUTSCH, MULANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Plaintiff, GS Line, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GS LINE, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, USA, INC. and LG<br>ELECTRONICS MOBILECOMM USA, INC.,<br><br>                    Defendants. | CIVIL ACTION NO:<br><br><br>**COMPLAINT and JURY DEMAND** |

Plaintiff, GS Line, Inc. ("Plaintiff" or "GSL "), by its attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, alleges the following against the Defendants, LG Electronics, USA, Inc. ("LGEUS") and LG Electronics MobileComm USA, Inc. ("LGEM") (together "Defendants" or LG"):

## THE PARTIES

1.    GS Line, Inc. ("GSL") provides promotional and marketing services.

2.    LG Electronics, USA, Inc. ("LGEUS") markets various consumer electronics in the United States such as headphones, speakers, televisions, refrigerators, dishwashers, washers, and air conditioners.

1

3.      LG Electronics MobileComm USA, Inc. ("LGEM") markets cell phones, portable wireless-enabled PCs, and related accessories in the United States.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction based on diversity of the parties' citizenship pursuant to 28 U.S.C. § 1332.

5.      GSL is a citizen of the State of Florida as its principal place of business is located at 959 Explorer Cove, Suite 123, Altamonte Springs, Florida 32701.

6.      LGEUS is a citizen of New Jersey as its principal place of business is located at 111 Sylvan Avenue, Englewood Cliffs, New Jersey 07362.

7.      LGEM is a citizen of New Jersey as its principal place of business is located at 111 Sylvan Avenue, Englewood Cliffs, New Jersey 07362.

8.      The amount in controversy exceeds $75,000.00, the precise amount to be determined at trial.

9.      Pursuant to 28 U.S.C. § 1391, venue in the United States District Court for the District of New Jersey is proper because a substantial part of the events or omissions giving rise to the claim occurred in New Jersey.

## FACTS COMMON TO ALL CLAIMS

10.      From on or about 2015 until 2020, Defendants retained GSL on multiple occasions to provide LGEUS and/or LGEM with marketing and promotion services.

11.      GSL regularly invoiced LG for its services.

12.      GSL's invoices, as well as GSL's contracts with LG, were reviewed by several layers of LG personnel, including persons occupying director and vice president titles.

13.      LG personnel also conducted several audits of GSL's invoices and services.

14.    For the approximately six year period between 2015 and mid-2020, LG voiced no objection to any GSL invoice or service.

15.    Under the terms of the contracts between GSL and LG, GSL was to have been paid for its services within 60 days of LG's receipt of GSL's invoice. Nevertheless, LG routinely failed to pay GSL's invoices within the required 60-day period.

16.    LG owes GSL several million dollars for unpaid and/or underpaid invoices. The dates of these invoices span several years. These unpaid invoices (identified by their invoice number and overdue amount), include, but are not limited to, the following:

a.    Inv. No. 2019-1118    $145,114.07;
b.    Inv. No. 2019-1160    $353,700.00;
c.    Inv. No. 201015    $188,882.71;
d.    Inv. No. 201026    $400,000.00;
e.    Inv. No. 201027    $ 24,500.00;
f.    Inv. No. 201028    $ 20,515.27

**LG's 2020 Audit and Investigation**

17.    As GSL pressed LG for payment of its overdue invoices, in or about June or July of 2020, LG announced that it was again auditing GSL's invoices.

18.    For over a year after its audit commenced, LG repeatedly demanded that GSL provide it with documents and other information. As GSL responded to one request, LG made another request, demanding still more documents and information.

19.    LG also questioned several of its own current and former employees about their business and professional relationships with GSL and its owners.

20.    LG's audit and investigatory interviews uncovered no evidence of any wrongdoing by GSL.

3

**LG's False Statements About GSL**

21.    Despite having no evidence of wrongdoing by GSL, LG repeatedly told others that GSL had engaged in unethical and unlawful conduct.

22.    Among LG's false statements was a statement which occurred in early 2021 at a meeting attended by various LG sales staff. At this meeting, an officer of LGEM falsely said that GSL had defrauded LG by charging for services it did not perform.

**LG's Agreements With GSL for Other Services**

23.    Throughout their working relationship. LG repeatedly asked GSL to provide it services and undertake financial obligations and costs on its behalf. In these instances, LG instructed GSL to invoice it for those services, obligations, and costs.

24.    As one example, in or about 2019, LG directed GSL to pay approximately $917,000 to LG vendor Genesco. LG instructed GSL to charge it for this payment service.

25.    Despite its promise to pay GSL for its payment service, LG has failed to do so.

26.    In a second example, in or about October 2019, LG engaged GSL to manage a program which offered certain LG customers a free LG television if the customer purchased certain other LG products (the "Free TV with Purchase Program" or "FTPP"). To implement the FTPP, GSL purchased and paid for 3,200 televisions from LG. The FTPP commenced in approximately November or December 2019. The FTPP was less successful than the parties had expected and hoped, and at the program's conclusion, 1,086 televisions remained in the possession of GSL (the "Remaining TVs"). The Remaining TVs belonged to GSL.

27.    The Free TV with Purchase Program did not require the return of the Remaining TVs to LG.  Nevertheless, in the summer of 2020, after beginning the 2020 audit referenced above, LG requested the return of the Remaining TVs.

28.   Because of the pending LG audit, and because many GSL invoices to LG remained unpaid, GSL initially declined to return the Remaining TVs.

29.   Nevertheless, in a show of GSL's good faith, and to encourage LG to pay GSL's open invoices, GSL offered to return the Remaining TVs to LG if LG agreed to reimburse GSL for storage and shipping charges. A representative of LGEM assured GSL that LG would reimburse GSL for the storage and shipping charges.

30.   On or about August 1, 2020, LG and GSL executed and delivered a written Request for Support under which GSL agreed to return the Remaining TVs to parties and locations specified by LG, and LG agreed to pay $90.90 for the shipping and storage of each Remaining TV ($98,717.40 total) within 60 days of their return.

31.   GSL fulfilled its obligation and shipped the Remaining TVs as specified by LG.

32.   On or about September 3, 2020, GSL issued an invoice (No. 20109) to LG for the sum of $98,717.40 for the return of the Remaining TVs. LG was obligated to pay this invoice by November 2, 2020.

33.   Despite its express promise and payment obligations, LG has failed to pay for the return of the Remaining TVs.

**COUNT ONE**
**(Breach of Contract)**

34.   GSL incorporates here, each of the foregoing allegations.

35.   GSL and LG are parties to contracts under which LG would pay GSL for its marketing, promotion, and other services.

36.   LG failure to pay GSL's invoices breached the contracts between LG and GSL.

37.   GSL has suffered damages as result of LG's contract breaches.

5

## COUNT TWO
### (Breach of the Implied Covenant of Good Faith & Fair Dealing)

38.    GSL incorporates here, each of the foregoing allegations.

39.    GSL and LG are parties to contracts under which LG would pay GSL for its marketing and promotion services.

40.    The law provides that every contract contains an implied covenant of good faith and fair dealing. This means that, even though not specifically stated in the contract, it is implied or understood that each party to the contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract.

41.    In particular, LG has failed and refused to pay the charges for the return of the Remaining TVs.

42.    LG breached the parties' contracts implied covenant by acting in bad faith and with an improper motive by defaming it, and by otherwise destroying or injuring GSL's right to receive the benefits or reasonable expectations of its contracts.

43.    GSL has suffered damages as result of LG's breaches.

## COUNT THREE
### (Unjust Enrichment)

44.    GSL incorporates here, each of the foregoing allegations.

45.    In reliance on LG's written and oral promises to pay GSL for its marketing, promotion and other services, GSL provided those services. As but one example, GSL paid over $900,000 to another LG vendor, Genesco. As another example, GSL returned the Remaining TVs on LG's promise that it would pay GSL for storage and shipping charges notwithstanding the pending of the audit by LG of GSL.

46.    By LG's failure to honor its promises, LG has been unjustly enriched to the detriment of GSL.

6

## COUNT FOUR
### (Defamation)

47.     GSL incorporates here, each of the foregoing allegations.

48.     LG communicated one or more statements of fact, including, but not limited to, statements that GSL had schemed to defraud LG of monies by charging it for products and services that GSL did not perform or provide.

49.     LG's statements injured GSL's reputation, caused others to lose confidence about its services, and/or injured GSL's business.

50.     LG's statements were heard by others.

51.     LG's statements about GSL were false.

52.     LG was wrong to communicate the defamatory statements.

## COUNT FIVE
### (Tortious Interference With Prospective Economic Advantage)

53.     GSL incorporates here, each of the foregoing allegations.

54.     GSL had a reasonable expectation of economic advantage from prospective contractual relationships with potential customers of promotion and marketing services, including One Plus ($1^+$), a consumer electronics company based in China.

55.     LG interfered with GSL's business by, among other actions, making false and/or defamatory statements about GSL that injured GSL's reputation and caused others to lose confidence about its services.

56.     LG's interference was inflicted intentionally and with malice and/or without justification or excuse.

57.     LG caused the loss of GSL's expected economic advantage.

58.     GSL has suffered damages as result of LG's interference.

**WHEREFORE,** GSL demands that judgment be entered against Defendants for the following relief:

    a.   enjoining LG from making false or defamatory statements about GSL;

    b.   awarding GSL punitive damages;

    c.   awarding GSL compensatory damages, including interest;

    d.   awarding GSL its attorneys' fees and costs;

    e.   awarding GSL its attorneys' fees and costs pursuant to the "prevailing party" provision of the parties' written contracts; and

    f.   awarding GSL any other relief that this Court may deem just and appropriate.

## JURY DEMAND

Plaintiff GS Line, Inc. requests a trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates George H. Parsells, III, as trial counsel.

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
George H. Parsells, III
William N. Aumenta
Attorneys for Plaintiff, GS Line, Inc.

By:   /s/ George H. Parsells, III
        George H. Parsells, III

By:   /s/ William N. Aumenta
        William N. Aumenta

Dated:  October 26, 2023

## **CERTIFICATION PURUSANT TO 28 U.S.C. § 1746**

Pursuant to Local Civil Rule 11.2 and 28 U.S.C. § 1746, the undersigned certifies that the matter in controversy is not the subject of any other action pending in any court or in any pending arbitration or administrative proceeding.

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
George H. Parsells, III
William N. Aumenta
Attorneys for Plaintiff, GS Line, Inc.

By:    /s/ George H. Parsells, III
              George H. Parsells, III


By:    /s/ William N. Aumenta
              William N. Aumenta


Dated:  October 26, 2023